# CASES

## ARGUED AND DETERMINED

#### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### NELSON et al. v. MEEHAN et al.

(Circuit Court of Appeals, Ninth Circuit. June 7, 1907.)

#### No. 1,376.

1. APPEAL AND ERROR—APPEALABLE ORDER—ALASKA CODES.

An order made by a district court of Alaska setting aside a prior judgment of such court and granting a new trial is not appealable under Alaska Codes, pt. 4, c. 51, § 504, which gives the right of appeal from a "final judgment or order," but such order may be reviewed on appeal by the Circuit Court of Appeals for want of jurisdiction in the court to make it.

[Ed. Note.—Finality of judgments and decrees for purposes of review, see note to Brush Electric Co. v. Electric Imp. Co. of San Jose, 2 C. C. A. 379; Central Trust Co. of New York v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.]

2. JUDGMENT—VACATION FOR FRAUD—POWER OF COURT AFTER TERM.

A court of equity has power to vacate its own decree at any time during the term at which it was entered on the ground that it was procured by means of the perjured testimony of the prevailing party, notwithstanding the fact that it has been affirmed on appeal; but in the absence of a statute conferring it, such power does not extend beyond the term. In such case, fraud to confer jurisdiction must consist in something extrinsic or outside of the matter which was actually tried or so in issue that it could have been tried in the suit in which the decree assailed was entered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 666–668.]

3. SAME—ALASKA STATUTE.

Alaska Code Civ. Proc. § 93, which authorizes a district court to relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect, does not confer power to vacate a judgment after the term on the ground that the issues were erroneously decided because of perjured testimony, the motion being based on affidavits going to the identical issues tried before.

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska.

Miller, West & De Journel, N. V. Harlan, and West, De Journel & O'Neill, for appellants.

John L. McGinn, Martin L. Sullivan, McGinn & Sullivan, J. C. Campbell, W. H. Metson, F. C. Drew, and F. P. Deering, for appellees.

155 F.—1

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge. O. A. Nelson and G. N. Hensley brought an action against Matt Meehan and T. Larson in December, 1903, in the United States District Court for the territory of Alaska, to compel the specific performance of a contract by which Meehan and Larson agreed to give to the plaintiffs a one-half interest in a certain mining claim if the plaintiffs would sink thereon three holes to bed rock. The cause was tried by the court, and it was found that the plaintiffs had fulfilled the terms of the contract by sinking three holes to bed rock, and that as a conclusion they were entitled to have conveyed to them by the defendants the half interest specified in the contract. Thereafter, and on August 17, 1904, a decree was entered in favor of the plaintiffs in accordance with the findings of the court. Defendants moved for a new trial upon the grounds of insufficiency of evidence to justify the decision and errors of law duly excepted to upon the trial. This motion was overruled upon August 17, 1904. The defendants appealed to this court, and upon May 8, 1905, the decree of the District Court was affirmed. Meehan v. Nelson, 137 Fed. 731, 70 C. C. A. 165. The mandate of the Circuit Court of Appeals was filed in the District Court of the proper district in Alaska on June 13, 1905; thereafter, on July 26, 1905, the defendants filed in the District Court a motion for an order vacating and setting aside the judgment and decree theretofore rendered by the District Court on August 17, 1904, which had been affirmed by this court, as heretofore stated. This motion was based upon the ground that the judgment and decree of the court had been founded upon the testimony of O. A. Nelson, one of the plaintiffs in the cause, and that he had willfully and corruptly sworn falsely by stating that he had sunk the three holes to bed rock and performed the conditions of the agreement which was made the basis of the suit in specific performance, that the court had been deceived, and that appellees did not discover the true condition of affairs until after the affirmance of the decree of the lower court by the Court of Appeals. The defendants accompanied their motion to vacate with a number of affidavits wherein affiants swore that hole No. 3 sunk by Nelson and Hensley did not go to bed rock as required by the terms of the agreement heretofore referred to, and that the gravel under the bottom of the No. 3 shaft to bed rock had never been removed. On July 29, 1905, the plaintiffs appeared specially and only for the purpose of objecting to the jurisdiction of the court to entertain or pass upon the motion filed by the defendants. On August 14, 1905, the court overruled the objections to the jurisdiction of the court to entertain the motion. After the court overruled plaintiffs' objections to the jurisdiction of the court, plaintiffs, meeting the issue made by the affidavits of defendants, filed a number of counter affidavits tending to show that the holes had been sunk to bed rock, and that after a winter has elapsed since ground has been disturbed it is very difficult to tell by looking at gravel in a drift which is gravel in place and which is gravel that has been disturbed or caved in; that a shaft generally caves in, and that during

the winter following this process of caving the whole mass freezes and forms a compact cohesive body which it is almost impossible to distinguish from gravel in place. After the submission of these affidavits by both sides, and with the consent of the parties to the litigation, the presiding judge made a personal inspection of the property, and it was his opinion that the Nelson and Hensley shaft No. 3 was not sunk to bed rock, that its lowest point was at least 5 feet 6 inches from bed rock, and that Nelson had deliberately committed perjury upon the trial of the case. The court, therefore, on September 16, 1905, ordered that the judgment and decree entered upon August 17, 1904, be set aside, and that the defendants be granted a new trial. The plaintiffs now prosecute this appeal from the order of the District Court so made and entered.

Questions of jurisdiction are presented by appellants and respondents. Appellants contend that there was no jurisdiction in the lower court to set aside and vacate the decree made in favor of Nelson and Hensley and to grant a new trial, inasmuch as it appears that the matters presented in the Meehan and Larson motion to vacate the decree and to grant a new trial are the identical questions that were tried and decided in the former suit hereinbefore referred to; hence that it was not within the power of the lower court, after the expiration of the term in which the decree was rendered, to vacate its decree merely because it was founded upon perjured testimony. On the other hand, the respondents challenge the jurisdiction of this court by a motion to dismiss the appeal, for the reason that the judgment or decree of the lower court vacating the former decree and granting a new trial is not a final judgment or decree from which an appeal may be taken under section 504, pt. 4, c. 51, of the Codes of Alaska. Section 504 of the Alaska Codes, so far as applicable, provides that an appeal and writ of error may be taken and prosecuted from a final judgment or order of the District Court of Alaska to the United States Circuit Court of Appeals for the Ninth Circuit where the value of the subject-matter exceeds $500. A judgment is defined by the Codes of Alaska (section 234, Carter's Annotated Codes) as "the final determination of the rights of the parties in the action." In Bostwick v. Brinker-hoff, 106 U. S. 3, 1 Sup. Ct. 15, 27 L. Ed. 73, the Supreme Court said that a judgment or decree, to be final within the meaning of the acts of Congress giving to the Supreme Court jurisdiction on appeals and writs of error, "must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here the court below would have nothing to do but execute the judgment or decree it had already rendered." An order granting a new trial continues a case for further proceedings; it does not finally determine the rights of the parties, but suspends the finality of the original judgment entered until the issues are tried and decided anew. Black on Judgments, § 34. These definitions of what constitutes a final judgment that may be appealed from exclude an order vacating a judgment and granting a new trial made in the same cause. It therefore follows that our inquiry must be limited to the question whether or not the District Court had power to make the order it did. If it had that power, whether it was wisely or unwisely exercised, is not for us to decide,

and respondents' motion to dismiss the appeal for lack of jurisdiction of this court would have to be sustained. If, conversely, the court acted in excess of its authority when it made the order appealed from, this court has jurisdiction of the appeal; and plaintiffs' objections to the jurisdiction of the lower court are sound.

This being a suit in equity, the District Court had full power to amend, correct, or vacate its decree at the same term in which it was made, if it was discovered that error had been committed or that fraud had been perpetrated upon the court by either of the parties or their agents, or if for other satisfactory reason the court in its discretion believed that it was just that the decree should be vacated or amended or reformed. Doss v. Tyack et al., 14 How. 297, 14 L. Ed. 428. Control of the court over its own judgments during the term at which they are rendered is spoken of by Justice Miller as of "every-day practice." Bassett and Harger v. United States, 9 Wall. 38, 19 L. Ed. 548. And later the same learned justice, speaking for the court in Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797, said:

"It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however exclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court."

The fact that an appeal was taken and that the decree was here affirmed did not necessarily take away the power of the lower court to vacate the decree during the term, if a fraud had been practiced. When the mandate of this court was filed affirming the decree the suit was again in the District Court. The rule is that a lower court is bound by the decree of the appellate court, and its duty is to put the decree into effect according to the mandate, and there is no authority to give further relief. But if during the term there is a showing, whether by motion or otherwise, of fraud or other wrong practiced by the prevailing party, the lower court has power to vacate a decree and grant a new trial notwithstanding an affirmance by a higher court. This would seem to be so because, so long as the term of court lasts in which the decree was made and entered, the decree remains subject to the judicial power of the court; and if during such term it is annulled, such annulment vacates what has been done, and the decree stands as if no appeal had been had. In Goddard v. Ordway, 101 U. S. 745, 25 L. Ed. 1040, an order allowing an appeal was granted and entered on the minutes of the court, and subsequently, during the term, this order was set aside and vacated at the instance of the party in whose favor the appeal had been granted. The Chief Justice, speaking for the court, said:

"We are unable to see how the allowance of an appeal differs in this respect from any other judicial order made in the cause. If the one is subject to revocation or amendment while the term continues, so, as it seems to us, must be the other." Ex parte Fuller, 182 U. S. 562, 21 Sup. Ct. 871, 45 L. Ed. 1230.

This brings us to the point where we must ascertain whether the order vacating the decree was made during the term at which the decree was rendered. Counsel for appellants have predicated assign-

ments of error upon the ground that the defendants' motion to vacate was not filed until after the commencement of a term of a court succeeding the one whereat the decree was made. Their brief, too, is prepared upon an assumption that such was the fact. Respondents' counsel, however, address our attention to the omission of the record to sustain the statement that the term at which the decree was rendered had closed. The transcript in the original appealed case shows that the trial was had in August, 1904, at a special term of the District Court held at Fairbanks, but there is nothing in that record that indicates an adjournment of such special term; while the record on this appeal shows affirmatively that at different times in April, 1905, the parties were before the court in the matter of a receivership asked for by plaintiffs. The only evidence of when there was any adjournment of court for the term is found in an order made by the judge at Fairbanks on August 4, 1906, wherein nunc pro tunc he extended the time for the plaintiffs to prepare and have signed their bill of exceptions to the order vacating the decree, in which order it is recited that "the final order in setting aside the judgment in the above-entitled cause was not made and signed until the sixteenth day of September, 1905; that the court adjourned sine die on the same day, and that the judge of said court left the Third division of the territory of Alaska immediately thereafter," etc. This is evidence of the adjournment of the term after the court had vacated the decree, but it in no way sheds light upon what term was so adjourned. Inasmuch as the District Courts of Alaska are courts of general jurisdiction, our determination of the point must be guided by those usual rules which, in the absence of a showing to the contrary, presume that courts have proceeded within the general scope of their powers, and that their orders and judgments have been given with authority. Fowler v. Equitable Trust Co., 141 U. S. 384, 12 Sup. Ct. 1, 35 L. Ed. 786; Stockslager v. United States, 116 Fed. 590, 54 C. C. A. 46. Resting our decision, therefore, upon the ground that the court had jurisdiction during the term at which it made the decree in specific performance to vacate the same, and that its order of vacation was presumably made during the same term, defendants' motion to dismiss the appeal for the reason that it is not an appealable order is sustained.

If the record had disclosed that the motion to set aside the decree and the action of the court vacating the same and granting a new trial were had at a term subsequent to the special term whereat the cause was heard, our conclusion would have been that the court exceeded its authority, and that the proper order would be to remand the case with directions to set aside the order vacating the decree and granting a new trial, to dismiss the defendants' motion to vacate, and to enforce the original decree of specific performance. We express this opinion now because it may be that appellants' positive statement in their assignment of errors and brief to the effect that the motion to vacate was made and action thereon were had at a subsequent term and their assumption that such is the truth will be proved by indisputable record facts, and because the briefs discuss the case from such a standpoint, and because if plaintiffs are correct in their assumption it is to the interest of all parties that the litigation should

be ended without another appeal. Our reasons for believing that defendants would not be entitled to the relief sought at a subsequent term of the court are briefly these: As we have shown, the rule is that during the term at which a decree is rendered the court which pronounces it may vacate or annul it or amend or modify or reform it. But the power of a court of equity to vacate or annul its own judgment or decree does not extend beyond the term at which the decree was pronounced. Cameron v. McRoberts, 3 Wheat. 591, 4 L. Ed. 467. There is a practice in some states whereby a judgment may be vacated after the term for perjury by the successful party, but generally, if not always, this is under authority to be found in some statutory provision which has expressly conferred ample yet prescribed control over the judgment or decree of the court whereby it may be so vacated. Nebraska has such a statute (section 602, Code of Civil Procedure) ; so has Washington (section 5153, Ballinger's Ann. Codes & St.). Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797. The statute of Alaska, as we shall see, contains no such provision. Bills of review or proceedings analogous to bills of review may also be brought to vacate decrees for fraud or collusion or lack of jurisdiction, but they also are exceptions based upon the principle that a judgment or decree may be vacated after the term in cases where the cause relied on to set it aside affects the validity of the judgment. Ex parte Sibbald v. United States, 12 Pet. 488, 9 L. Ed. 1167. Doubtless a motion upon notice may be regarded as good practice.

It has been earnestly insisted by counsel for the appellees that the District Court had an inherent power to vacate the decree even after the term had expired, because the fraud in the judgment vacated rested upon the perjured testimony of the prevailing party, and upon such perjured testimony alone. But we believe that the great weight of authority is against this contention, and that the acts for which a court of equity will on account of fraud annul a judgment or decree between the same parties after the term has ended have relation to frauds extrinsic or collateral to the matter tried, and not to a fraud in the matter on which the decree was rendered. The leading case of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, establishes this precise doctrine. After a careful review of the authorities, English and American, Justice Miller used this language:

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife than any compensation arising from doing justice in individual cases."

In Vance v. Burbank, 101 U. S. 514, 25 L. Ed. 929, Chief Justice Waite cited the Throckmorton Case, saying that it had been settled that the fraud in respect to which relief will be granted where a decree is sought to be set aside after the decisions of a judicial tribunal must be such as has been practiced upon the unsuccessful party and prevented him from exhibiting his case fully, and that false testimony or forged documents even are not enough, if the disputed matter has actually been presented to or considered by the appropriate tribunal. More than 12

years after the Throckmorton Case and Vance v. Burbank, supra, the Supreme Court, in 1891, decided Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870, which is not infrequently relied upon as modifying the doctrine of the two earlier cases cited. Evidently the court itself did not intend the decision to be a modification, inasmuch as the opinion refers to the Throckmorton Case to sustain the rule that while generally a defense cannot be set up in equity which has been fully and fairly tried at law, still equity will regard an application to grant relief against a judgment which it is against conscience to execute, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law but was prevented from so doing by fraud or accident, unmixed with any fraud or negligence in himself or his agents. The implication from the court's discussion seems to be that where there has been a trial and judgment after full opportunity was given for the introduction of evidence, and no extrinsic or collateral fraud has occurred, the general rule should prevail. In Bailey v. Sundberg (decided by Judges Wallace and Lacombe in 1892) 49 Fed. 583, 1 C. C. A. 387, it was held that if, on a libel in rem for collision, the master of the libelee, though not a formal party, took an active part in the defense, a dismissal on the merits rendered the questions res adjudicata as against a subsequent libel in personam against him. In Graver v. Faurot (C. C.) 64 Fed. 241, decided in 1894, an action was brought to set aside on the ground of fraud a decree rendered in a state court. Defendant demurred to the bill. The fraud charged was perjury by Faurot and the deception of the court. Judge Jenkins said the question was "sharply presented" whether a judgment can be attacked for fraud and the prevailing party deprived of the benefit thereof when he has obtained that judgment by perjury in his answer or upon the trial. Referring to the Throckmorton and Marshall v. Holmes Cases, supra, the learned judge said he could not distinguish between the two cases, but followed the Throckmorton Case because the later case cited it with approval, and because the fraud in the case before him was not extrinsic, but was in issue in the primary suit. An appeal was taken, and the Circuit Court of Appeals of the Seventh Circuit (76 Fed. 257, 22 C. C. A. 156) reversed the case upon the ground that it was not one within the spirit or reason of the decisions of the Supreme Court cited, inasmuch as there never was a trial in Graver v. Faurot, the complainant having failed to reply to the answer, and the case having been submitted with the answer as conclusive proof. The court points out that there was no conflict or weighing of evidence, but decree went as a matter of course; and the decision turned upon the point that the case was one of fraud that was extrinsic and collateral, distinct from and antecedent to the use of the answer at the hearing. The judges referred to a possible inconsistency between the decisions of the Supreme Court, but distinguished the case before them from both. In Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95, decided in 1895, after reargument, the Supreme Court, by Justice Gray, used this language:

"It has often indeed been declared by this court that the fraud which entitles a party to impeach the judgment of one of our own tribunals must be fraud extrinsic to the matter tried in the cause, and not merely consist in

false and fraudulent documents or testimony submitted to that tribunal and the truth of which was contested before and passed upon by it."

—citing the Throckmorton Case as first among those establishing the doctrine announced.

This opinion, it will be observed, was delivered just before the case of Graver v. Faurot, 76 Fed. 257, 22 C. C. A. 156, was decided by the Court of Appeals, but evidently it was not brought to the attention of the latter court. A few years later (1898) the Court of Appeals of the Second Circuit decided United States v. Gleeson, 90 Fed. 778, 33 C. C. A. 272. That was a suit to vacate and annul a judgment on the sole ground that defendant induced the court to make its judgment solely by his own false and perjured testimony. But the court followed the doctrine of the Throckmorton Case as reiterated in Hilton v. Guyot, supra, and by the rule of stare decisis affirmed the decision of the Circuit Court sustaining a demurrer to the bill. Marshall v. Holmes, supra, was there called to the court's attention, and they answered the suggestion of a possible modification of the Throckmorton Case in this way:

"Precisely the same question—as to the effect of Marshall v. Holmes upon U. S. v. Throckmorton—was before us in the case of Bailey v. Sundberg, 1 U. S. App. 101, 1 C. C. A. 387, 49 Fed. 583. In that cause the libelant, who had been defeated in an action in rem against a steamship, brought a new action in personam against her owners. This court held that the decree in the earlier suit precluded Bailey from a re-examination of the same questions in the later suit. Subsequently he amended his libel, charging that, without negligence or laches or other fault on the part of the libelants, the respondent, by his false evidence given in the action in rem, enabled the claimants of the steamship to obtain the judgment therein, which judgment was set up as res adjudicata. Exceptions to this amendment were sustained by the District Court, and the libel dismissed. Upon appeal to this court the decree of the District Court was affirmed upon the authority of U. S. v. Throckmorton, no opinion being written. The libelant thereupon twice appealed to the Supreme Court for a certiorari, upon briefs which presented with very great fullness the apparent conflict between the two cases in 98 U. S. (25 L. Ed.) and 141 U. S. and 12 Sup. Ct. (35 L. Ed.) and urged upon the consideration of the court that the judges in the Second Circuit were following the earlier, rather than the later, decision. Both applications were denied. 145 U. S. 628, 12 Sup. Ct. 259; 154 U. S. 494, 14 Sup. Ct. 1142. Until the attention of this court is called to some decision of the Supreme Court, other than Holmes v. Marshall, criticizing or limiting the doctrine of U. S. v. Throckmorton, it would seem that the principle of stare decisis should preclude its entertaining a bill which seeks to vacate or annul a judgment solely on the ground that such judgment was procured by means of the perjured testimony of the party whom it benefits."

Again, in the later case of United States v. Beebe, 180 U. S. 343, 21 Sup. Ct. 371, 45 L. Ed. 563, decided in 1901, the Supreme Court, through Justice Peckham, reaffirmed the general principle of the Throckmorton Case, supra, holding that false representations were not such a fraud as a court of equity will relieve against by setting aside a judgment in a case where such representations were made.

A still later decision is Bailey v. Willeford (C. C.) 126 Fed. 803, where Judge Simonton interpreted the rule of the Throckmorton Case as did the Court of Appeals in U. S. v. Gleeson, supra, and his decision was affirmed in 1905 by the Court of Appeals of the Fourth Circuit. Bailey v. Willeford, 136 Fed. 382, 69 C. C. A. 226. It will be seen from these cases that the doctrine upheld by the federal courts

continues to be in accord with that pronounced in the Throckmorton Case, supra, which refuses relief unless the fraud complained of is extrinsic to the matter tried in the primary suit.

Turning to the decisions of the Appellate Courts of several of the states, we find the same general established rules. In Ross v. Wood, 70 N. Y. 9, the Court of Appeals denied relief where it was sought to set aside a judgment upon the ground that it was obtained by false testimony. In Dringer v. Receiver, 42 N. J. Eq. 573, 8 Atl. 811, the Throckmorton Case is approved, and it was held that, where fraud is relied on to annul a judgment, the fraud, in order to confer jurisdiction, must consist in something extrinsic or outside of the matter which was actually tried, or so in issue that it could have been tried in the suit in which the judgment assailed was entered. The Supreme Court of California in Pico v. Cohn, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 25 Am. St. Rep. 159, in an opinion by Chief Justice Beatty, very clearly announces that a decree will not be vacated merely because it was obtained by perjured testimony. The court said:

"The reason of this rule is, that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceedings, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy."

In Friese v. Hummel, 26 Or. 145, 37 Pac. 458, 46 Am. St. Rep. 610, the case of Pico v. Cohn was approved and followed. In Camp v. Ward, 37 Atl. 747, 69 Vt. 286, 60 Am. St. Rep. 929, the Supreme Court of Vermont refused to grant relief in equity where it was alleged the judgment was obtained by perjured testimony. In McDougall v. Walling, 58 Pac. 669, 21 Wash. 478, 75 Am. St. Rep. 849, the Supreme Court of Washington followed the Throckmorton Case, supra, and Pico v. Cohn, supra, notwithstanding an express statutory provision of that state to the effect that the superior court may vacate a judgment for fraud practiced by the successful party in obtaining it; the court holding that perjury does not constitute such fraud as will authorize a judgment to be set aside except under circumstances that deceive the opposite party as to the nature of the testimony, and relieve him of the implication of want of diligence in discovering its falsity. In Maryland Steel Co. v. Marney, 46 Atl. 1077, 91 Md. 360, the Court of Appeals of Maryland laid down the same rule, expressly declining to recognize any distinction between the instances where witnesses have perjured themselves and where the successful party has been guilty of subornation of perjury.

It would be useless to cite further authority. The cases we have collected demonstrate that the trend of modern decision sustains the reason of the Throckmorton Case as founded upon wisdom in the policy of the law, whereby, after a fair trial and submission of a controversy and after motion for a new trial has been denied, and after an appeal to a superior tribunal and a review have been had, a judg-

ment will not be vacated, at a subsequent term, merely because it was based on perjured testimony by a party. Defendants cite Munro v. Callahan, 75 N. W. 151, 55 Neb. 75, 70 Am. St. Rep. 366. The decision in that case was justified upon an express statute of the state authorizing a judgment to be vacated, after the term at which it was rendered, for fraud practiced by the successful party; and perjury was regarded as within the fraud contemplated by the Code provision. The discussion by the court seems to go farther than the point decided and to sustain the defendant's position. But in so far as it conflicts with the rule of decision by the federal courts, we cannot agree with it. Edson v. Edson, 108 Mass. 590, 11 Am. Rep. 393, was not a case involving intrinsic fraud or fraud upon the trial. The court, taking the facts alleged in the application to set aside the decree of divorce, distinguished the case in this way:

"These set forth a case in which it is clear that a party has procured a judgment of this court in his favor by the perpetration of a gross fraud, by means of which he induced this court to take cognizance of a case at a term of the court in a county in which it could not legally exercise jurisdiction over the parties, and to hear and determine it without giving to the adverse party any due or legal notice of the proceedings, or any opportunity to appear and be heard in the suit. The question to be determined is, whether a judgment so obtained can be re-examined and set aside by the party aggrieved by the fraud, or whether it is to be taken as forever binding and conclusive on the rights and obligations of the parties."

The reasoning of the court is similar to that in Graver v. Faurot, supra. Nugent v. Met. St. Ry. Co., 61 N. Y. Supp. 476, 46 App. Div. 105, also cited by respondents, was decided upon a motion for a new trial based upon a discovery made by the losing party that the judgment and verdict had been obtained by means of a conspiracy between plaintiff and one of her attorneys and several witnesses. That a judgment will not be vacated merely because it is based upon or procured by perjured testimony was conceded by the court, but it was shown that the case was taken out of the general rule by the added fraud of a conspiracy. Holton v. Davis, 108 Fed. 138, 47 C. C. A. 246, decided by this court, does not conflict with the established rules. There the bill alleged a conspiracy between one of the parties and outside persons and the carrying out of the conspiracy and a fraud upon the court. The facts pleaded were relied upon as showing extrinsic and collateral fraud, and as the court cited the Throckmorton Case it is not to be inferred that it intended to go beyond the correct rule to be deduced therefrom.

Defendants contend, however, that power to vacate the judgment existed under the Alaska Codes. It is therein provided that a District Court may in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment or order or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. Section 93, Alaska Code Civ. Proc. Defendants have failed to make a satisfactory showing under any of the enumerated grounds of this statute. The issue tried in the original suit was narrowed to whether the plaintiffs sunk hole No. 3 to bed rock. Their verified complaint alleged that they had, and defendants by their answer denied that

they had; so that the controversy, as was stated by Judge Hawley in the opinion of the court in Meehan v. Nelson, supra, was "confined solely to hole No. 3. Was it sunk to bedrock?" Defendants went into the trial of the cause knowing precisely what plaintiffs would have to swear to to prevail, and they met the issues presented, but were defeated. They were not surprised, there was no inadvertence or mistake, and they are not to be relieved now if they omitted to produce evidence they might have procured. Having tried the merits of their suit, if the term is over, they are estopped by the conclusion of the court. The affidavits filed in support of and against the motion to vacate are a continuation of conflicting testimony upon the identical issues tried before. It is said, however, that the statute of Alaska (section 93) is taken from Oregon, and that it has been construed by the Supreme Court of that state in a way favorable to appellees in Thompson v. Connell, 31 Or. 231, 48 Pac. 467, 65 Am. St. Rep. 818. That decision, however, does not sustain the contention that perjury alone committed upon the trial of a case by the prevailing party is a ground for relief under a statute like section 93 of the Alaska Code. The facts relied upon in that case were that defendant and another person, with intent to deceive plaintiff and induce him not to employ an attorney in the original suit, represented that Connell would extend the time for answering and that a settlement was contemplated by which plaintiff would be discharged from his alleged liability, and that plaintiff relied upon the representations so made and did not employ an attorney or appear in the case, but that defendant, conspiring to take advantage of him and to defraud him, caused judgment to be rendered against him without his knowledge or consent and contrary to the agreement. These facts were held to constitute "surprise" under the statute. The decision is in no way authority in the present case.

So if it is a fact that the term of court at which the decree was rendered had expired before the motion to vacate was filed, then the case is but one where the litigants have had their day in court, and have been afforded full opportunity to try the merits of their controversy. They had a fair trial. The defendants lost. They were given the right of appeal and availed themselves of it. Again they were unsuccessful; and no fraud extrinsic or collateral to the matter tried being shown, and no statutory ground for vacating the decree appearing, it will not do for them now to seek to retry the issues already passed upon. The litigation should be ended.

For the reasons already given, the appeal is dismissed.