GEORGE F. MUNRO, APPELLEE, V. DELIA A. CALLAHAN,
APPELLANT.

FILED MAY 4, 1898.   No. 8038.

1. **Vacating Judgment: FRAUD.** Neither an action under section 602 of the Code of Civil Procedure, nor an independent suit in equity, will lie to vacate a judgment, after the term at which it was rendered, on account of the fraud of the successful party, unless such fraud occurred or was practiced in connection with the trial of the case.

2. ———: PERJURY: MISTAKE. Equity will not vacate a judgment on account of an innocent mistake or want of recollection on the part of the plaintiff or his witnesses, nor, generally, on account of the perjury of other witnesses in the case.

3. ———: ———: EQUITY. But where it appears that the judgment depends for its support upon the evidence of the successful party given at the trial, and that the defeated party has a valid defense which he was prevented from establishing by reason of such perjury, and where he has been guilty of no negligence and has exhausted all his ordinary legal remedies for obtaining a vacation of such judgment, then equity, in a proper proceeding, will vacate such judgment and grant the defeated party a new trial of the action.

4. ———: ———: PLEADING. The allegations of the petition *held* to support a decree of the district court vacating a judgment at law procured by the perjury of the successful party on the trial.

APPEAL from the district court of Douglas county. Heard below before DUFFIE, J. *Affirmed.*

The opinion contains a statement of the case.

*John F. Cromelien* and *William F. Gurley,* for appellants:

The petition is demurrable, because (1) a court of equity is without jurisdiction, there being an adequate remedy at law; (2) because it does not state facts sufficient to constitute a cause of action; (3) and because it shows that plaintiff has been guilty of gross negligence, which would deprive him of equitable relief. (*McClure v. Warner,* 16 Neb. 447; *Gibson v. Parlin,* 13 Neb. 292; *Burlington & M. R. R. Co. v. Kearney County,* 17 Neb. 511;

*Cheney v. Dunlap,* 27 Neb. 401; *Chicago, R. I. & P. R. Co. v. Shepard,* 39 Neb. 526; *Renfrew v. Willis,* 33 Neb. 98; *Scofield v. State Nat. Bank,* 9 Neb. 316; *Young v. Morgan,* 9 Neb. 169; *Gould v. Loughran,* 19 Neb. 392; *Buchanan v. Griggs,* 18 Neb. 121; *Hartford Fire Ins. Co. v. Meyer,* 30 Neb. 135; *Shane v. Clarke,* 3 Har. & M. [Md.] 101; *Clough v. State,* 7 Neb. 324; *Lamb v. State,* 41 Neb. 356; *Hill v. State,* 42 Neb. 503; *Cohn v. Goldman,* 76 N. Y. 284; *Wright v. Bourdon,* 50 Vt. 494; *McHenry v. Sneer,* 56 Ia. 649; *Thomas v. Markmann,* 43 Neb. 828; *Woodward v. Pike,* 43 Neb. 777; *Nicholson v. Patterson,* 6 Humph. [Tenn.] 394; *Harrison v. Harrison,* 1 Litt. [Ky.] 137; *Veech v. Pennebaker,* 2 Bibb [Ky.] 326; *Codde v. Mohiat,* 66 N. W. Rep. [Mich.] 1093; *Gray v. Barton,* 28 N. W. Rep. [Mich.] 813.)

*J. H. Van Dusen* and *W. S. Summers, contra.*

RAGAN, C.

June 25, 1892, on the complaint of Delia A. Callahan, George F. Munro was by the district court of Douglas county adjudged to be the father of the former's illegitimate child. From this judgment Munro prosecuted a proceeding in error to this court, which affirmed the judgment of the district court. (*Munro v. Callahan,* 41 Neb. 849.) Subsequently, on December 6, 1894, Munro filed a petition in the district court of Douglas county against Callahan reciting the record and proceedings of the former suit and alleging, among other things, that Callahan had procured said judgment by committing willful and corrupt perjury on the trial of that case, and prayed the court to set such judgment aside, and to grant him, Munro, a new trial. The district court, on hearing the action, set aside the former judgment and granted Munro a new trial, from which order Callahan has appealed. The bill of exceptions containing the evidence offered on the trial of this case in the district court has been quashed, and the sole question for our determination is whether the pleadings in this case will support the decree rendered therein.

1. To the petition filed by Munro on December 6, 1894, an answer was filed on the 15th of said month, and subsequently, on the 17th, an amended petition was filed. The record does not disclose that an answer was filed to this amended petition, but the case seems to have been tried on the amended petition. The decree recites that the case was heard upon the pleadings filed by the parties and upon the evidence, and counsel for the appellant have addressed their arguments to the sufficiency of the allegations of the amended petition. We shall, therefore, only inquire whether the allegations of the amended petition will support the decree under review. This amended petition, among other things, alleged: "Plaintiff further charges that said verdict so rendered in said action was obtained on the false, fraudulent, and perjured testimony of the said Delia A. Callahan; that said Delia A. Callahan on the said trial testified that the bastard child, of which she charged this plaintiff as being the father, was conceived on Easter Sunday, March 29, 1891, between the hours of 2 and 5 o'clock of the afternoon of said day; that said testimony was false and fraudulent; and said Delia A. Callahan, at the time of giving the same, well knew it so to be. Plaintiff alleges the fact to be that on the said Easter Sunday he did not see the said Delia A. Callahan. * * * Plaintiff further charges the fact to be that while he well knew that the said Delia A. Callahan had testified falsely on said trial, yet he did not, at the time, know where he could obtain the testimony to show that the said Delia A. Callahan had sworn falsely for the purpose of obtaining an unjust verdict against him; that he had no knowledge of where he could obtain the witnesses who knew and would testify that said Delia A. Callahan had sworn falsely in said action at law until long after the time had expired for filing a motion for a new trial in said cause; that this plaintiff now has such testimony and will produce the same in court." Since the bill of exceptions has been quashed the judgment is to be considered as if

it had been rendered by default, or on the district court's overruling a demurrer interposed to the amended petition by Callahan. In addition to certain special findings the tenth finding of the district court is as follows: "The court further finds that the general equities are with the plaintiff." We take it that within this general finding are included findings that Munro had a *prima facie* defense to the action brought against him by Callahan; that the defeat suffered by him in that action was not the result of any negligence or laches on his part; and that he had diligently pursued and exhausted all ordinary legal remedies provided by statute for obtaining a new trial of said action and for the vacation of said judgment. We think the petition sufficient to support these findings, as it sets out, in addition to what we have quoted, the filing by Miss Callahan in the district court of the complaint against Munro charging him with being the father of her illegitimate child; that he pleaded not guilty to such charge; was tried to a jury and found guilty; his filing of a motion for a new trial; the overruling of such motion; the judgment upon the verdict of the jury; the error proceeding to this court and the affirmance of the judgment of the district court.

2. Assuming that the general finding of the district court includes the finding that the judgment obtained by Miss Callahan against Munro was procured by her willful perjury, is the petition in that respect sufficient to support the finding? Is it good against a demurrer? When the nature of the case in which that judgment is rendered is considered, when it is remembered that the only issue in that case was whether Munro was guilty of being the father of Callahan's illegitimate child, that without her positive and unequivocal testimony that he was her child's father, she could not have procured the judgment she did, and that she, and she alone, could positively and certainly know who was the father of her child, we think the petition sufficient. In other words, from the very nature of the case, a finding that one is the

father of a bastard child rests, and must rest, where the issue is litigated, upon the testimony of the mother; and if this testimony is false and perjured, then a judgment based on such a finding is one procured by fraud practiced by the successful party.   Section 602 of the Code of Civil Procedure provides that a district court shall have power to vacate a judgment rendered by it, after the term at which it was rendered, for fraud practiced by the successful party in obtaining the judgment.   Certainly the obtaining of a judgment by willful and corrupt perjury is obtaining it by fraud within the meaning of this section of the Code.   But this statute is merely a legislative adoption of the doctrine of the equity courts in force when it was enacted.   Long before this Code was enacted the setting aside of a judgment procured by the fraud of the successful party and the granting the defeated party a new trial, were jurisdictions possessed and enforced by the courts of equity when it appeared that the defeated party had a valid defense which he had been prevented by the fraud of the successful party from making out, and where he had been guilty of no negligence or laches and had exhausted all his ordinary legal remedies for obtaining a vacation of such judgment.   (3 Pomeroy, Equity Jurisprudence [2d ed.] sec. 1364; 2 Freeman, Judgments [4th ed.] sec. 489.)   Whether, then, this action is based on section 602 of the Code of Civil Procedure, or whether it be regarded as an independent suit in equity, the jurisdiction and authority of the district court to grant Munro a new trial of the law action are undoubted.

The cases are not numerous in which a judgment has been vacated and the defeated party granted a new trial on the ground that the judgment was obtained by the perjury of the successful party; but this is perhaps because, from the very nature of the case, the existence of the fraud or perjury could not be established otherwise than by trying anew the issue tried and determined in the action in which the new trial is sought; and neither

the equity rule nor the Code authorizes the vacation of a judgment after the term at which it was rendered and the granting a defeated party a new trial for fraud practiced by him, save where the fraud was practiced in connection with the trial.

In *Laithe v. McDonald*, 12 Kan. 340, Laithe brought an action against McDonald for a failure to deliver goods which he charged were received by McDonald as a common carrier and lost through his negligence. McDonald answered by a general denial and did not appear further in the case. On the trial Laithe willfully, corruptly, and falsely swore that McDonald was a common carrier; had received the goods in that capacity and failed to deliver them; and that they were worth something over $5,000, for which sum he obtained a judgment. The supreme court of Kansas affirmed a judgment of the district court vacating the judgment in the law action on the ground that Laithe obtained it by fraud, the fraud consisting of his perjury. The court held that a defendant was not entitled to have a judgment vacated on account of any innocent mistake or want of recollection on the part of the plaintiff or his witnesses, nor even on account of the perjury of other witnesses in the case, but said that no party was bound to anticipate or suppose that the other party would commit willful and corrupt perjury, and that no party was bound to the exercise of extraordinary diligence in preparing to meet such perjury. It will be observed that in the case cited the judgment rested entirely upon the perjured testimony of Laithe, just as, in the case at bar, the judgment that Munro was the father of Callahan's illegitimate child depended entirely for support upon Callahan's evidence that he was the father of her child.

In *Graver v. Faurot*, 76 Fed. Rep. 257, the complainant brought a suit in equity, in a state court, in which he charged two defendants with fraudulently inducing him to purchase some worthless shares of corporate stock, and, in accordance with the old chancery practice, he

required the parties made defendants to answer certain allegations or interrogatories in the bill under oath. The parties made defendants answered. The answers were false and perjured and the complainant suffered a defeat. He subsequently discovered that the answers made by the defendants were false and then brought suit to vacate the judgment, and the court held that the making of the false answers was a positive and actual fraud which vitiated the decree. Here again the judgment complained of rested entirely upon the perjured testimony of the two defendants in whose favor the judgment was rendered. For a further discussion of the subject of the power of a court of equity to vacate a judgment obtained by fraud practiced by the successful party at the trial of the case in which it was rendered, see *United States v. Throckmorton,* 98 U. S. 61; *Ward v. Town of Southfield,* 102 N. Y. 293, 6 N. E. Rep. 660; *Asbury v. Frisz,* 47 N. E. Rep. [Ind.] 328.

Our conclusion therefore is that the petition charges that Miss Callahan procured a judgment determining that Munro was the father of her illegitimate child; that she obtained such judgment by her own false and perjured testimony, and that this was a fraud practiced by her in and about the trial; and, from the nature of the case, the judgment rests solely upon her evidence and the petition sustains the decree of the district court vacating that judgment, and such decree is accordingly

AFFIRMED.

IRVINE, C., expresses no opinion.