[No. 3232.   Decided October 4, 1899.]

MALCOLM McDOUGALL, *Appellant*, v. N. D. WALLING *et al., Respondents.*

VACATING JUDGMENT—GROUNDS—PERJURY.

Perjury by the prevailing party, discovered subsequently to trial, does not constitute such fraud, within the meaning of Bal. Code, § 5153, subd. 4, as to warrant the vacating of the judgment in his favor, where the judgment does not rest upon the false testimony, but is supported by other evidence in the case.

SAME.

The acceptance of full indemnity by a surety from his principal would not alter his relations so as to make him liable as a principal, but would merely estop him from claiming a discharge by reason of an extension of time to the principal unknown to him; hence, perjury on the part of the surety in testifying that he had received no consideration from the principal for becoming surety, in an action in which he sought to be relieved of liability on the ground of an extension of time to his principal unconsented to by him, does not constitute such fraud practiced by the prevailing party as to warrant the vacating of the judgment, where the issues were clearly defined, and there were no circumstances in connection with the perjury which would relieve the opposite party from all implication of want of diligence and completely deceive him in the nature of the testimony.

SAME—FAILURE TO DISCLOSE EVIDENCE.

A judgment cannot be vacated on the ground of fraud, because in the trial the prevailing party defendant failed to voluntarily disclose the weakness of his defense, or to disclose evidence which would tend to overthrow his defense.

Appeal from Superior Court, Snohomish County.— Hon. FRANK T. REID, Judge. Affirmed.

*S. H. Piles* and *Donworth & Howe,* for appellant.

*J. A. Coleman,* for respondent Swalwell.

The opinion of the court was delivered by

REAVIS, J.—Appellant filed his petition in the superior court of Snohomish county, praying that a judgment recovered by respondent Swalwell against appellant be vacated on the grounds of fraud practiced by the respondent in obtaining the judgment, and because of after-discovered evidence which would have changed the result had it been produced at the trial, but which was suppressed by Swalwell. The cause has been before this court twice, reported in 15 Wash. 78 (45 Pac. 668, 55 Am. St. Rep. 871), and in 19 Wash. 80 (52 Pac. 530). A concise statement is found in the opinion on the first appeal in 15 Wash., *supra,* as follows:

"Appellant, McDougall, brought this action in the superior court of Snohomish county upon a promissory note executed by N. D. Walling and William G. Swalwell, payable to the order of Walling, dated April 24, 1893, and payable 90 days thereafter; said note being for the sum of $2,800, and interest at the rate of 12 per cent. per annum from date until paid. The defendant Walling made default. Respondent Swalwell answered that he executed the note solely for the accommodation of Walling, and was a surety only, all of which was known to plaintiff at the time of the indorsement and delivery of said note to him by Walling; that, after the maturity of the note, appellant entered into a definite agreement with the defendant Walling, whereby the time of payment of said note was extended, and that the agreement to extend was made without the consent of the respondent, and released him from the payment thereof. The appellant replied, denying all of the affirmative matter set out in the answer, and, the cause having been tried before a jury, a verdict was returned in favor of Swalwell. Thereafter, appellant's motion for a new trial was denied, judgment entered dismissing the action as to Swalwell, and the cause appealed."

The judgment then before this court was reversed for error in instructing the jury. On March 16, 1897, the cause was tried again in the superior court, and the jury found, in response to the issue in the case, specially that respondent Swalwell did not sign the note in suit as a joint maker; that he signed it as surety only; that appellant, McDougall, at the time he bought the note, knew that Swalwell signed it as surety only; that Swalwell did not consent that Walling might obtain an extension of time on the note; that Walling did not obtain the extension on a misrepresentation or false statement that Swalwell knew of his application and consented that the time might be extended; that Swalwell did not promise to pay the note after the extension of time had been granted; and judgment was again entered in favor of Swalwell. An appeal

was again taken, which was determined and is reported in 19 Wash., *supra;* and it was there observed:

"Appellant [McDougall] also maintains that the evidence does not justify the verdict, but it is sufficient to say upon this point that the evidence in the record here is substantially conflicting and the jury found for the respondent upon all the issues submitted to it, and the superior court declined to grant a new trial upon this ground."

After the affirmance of the last judgment here, the appellant applied to this court to vacate the judgment, but was remanded to the superior court, and filed his petition to vacate the judgment upon the grounds of fraud on the part of Swalwell in procuring it, and newly discovered evidence which would change the result. Respondent Swalwell was sworn as a witness in his own behalf at the trial and testified as follows:

" Q.   You may state, Mr. Swalwell, the circumstances under which you came to sign that note."

A.   Mr. Walling applied to me for a loan in April in 1893 for the purpose of buying some Valentine scrip; I told him I did not have any money to loan, and a few days afterwards he had made a trip to Seattle he had said and said he could raise the money if I would go his security; said he had used my name down there and suggested my name as security, and after going in to the matter for which he was to use the money, explained the townsite business thoroughly, I agreed to go his security for ninety days.

Q.   Did you receive any proceeds on that note?

A.   No, sir.

Q.   Did you receive any consideration from Mr. Swalwell for signing that note?

A.   From Mr. Walling?

Q.   From Mr. Walling for signing that note.

A.   No, sir.

Q.   Did you receive any consideration for (from) any one for the execution of that note?

A.   No, sir."

Appellant, since the final decision of the case, has discovered written evidence, which was within respondents' knowledge, tending to show that at the time the note in question was executed the money obtained upon the note was for the purpose of procuring Valentine scrip to be placed upon the townsite of Silverton, in. Snohomish county, and that the stock of the townsite company, consisting of 499 shares, was to be held in escrow to secure and protect Swalwell as security upon the note; and that Walling also agreed to pay Swalwell, in consideration of his becoming surety on the note, $750 in cash, or to deliver him $1,500 in stock of the company, as Swalwell might elect; and that the account of the company was to be kept in the First National Bank of Everett, of which Swalwell was president; that, in case Walling paid the note, the stock of the company should be returned to him, but, in case of his default, the stock was to be turned over to Swalwell; and it is also alleged in the petition that the stock mentioned was of a greater value than the amount due on the note.

1. The petition to vacate the judgment is presented under subd. 4 of § 5153, Bal. Code. It is maintained by counsel for appellant that perjury is such fraud as warrants the vacation of a judgment obtained by a party committing it, and that the respondent committed perjury at the trial; and authorities are cited from states with statutes relating to vacations of judgment similar to that of our state.

In *Heathcote v. Haskins,* 74 Iowa, 566 (38 N. W. 417), the court observed:

" That the production upon the trial of false testimony to establish a cause of action or defense would in many cases amount to such a fraud as would entitle the adverse party to a new trial, or the vacation of the judgment, is certainly true. This would be so if the fact of its falsity or the evidence by which the fact could be established was

not discovered until after the trial or the rendition of the judgment."

But in that case the fraud was not made out to the satisfaction of the court.

In *Munro v. Callahan,* 55 Neb. 75 (75 N. W. 151), the judgment had been rendered in favor of plaintiff. After its affirmance, the defendant filed a petition to vacate the judgment on the ground that it had been obtained by the perjury of the plaintiff, and on the appeal it was said:

" Section 602 of the Code of Civil Procedure provides that a district court shall have power to vacate a judgment rendered by it after the term at which it was rendered, for fraud practiced by the successful party in obtaining the judgment. Certainly the obtaining of a judgment by wilful and corrupt perjury is obtaining it by fraud. . . ."

But in this case the sole testimony was that of the plaintiff, and the judgment was obtained on her testimony alone. So of the case of *Laithe v. McDonald,* 12 Kan. 340. Laithe brought an action against McDonald for failure to deliver goods which he charged were received by McDonald as a common carrier and lost through his negligence. McDonald answered by a general denial, and did not appear further in the case. On the trial, Laithe wilfully, corruptly and falsely swore that McDonald was a common carrier, and had received the goods and failed to deliver them, and that they were worth over $5,000, for which he obtained a judgment. The court affirmed the judgment of the district court vacating the judgment on the ground that Laithe obtained it by fraud, the fraud consisting of his perjury. But the court held that defendant was not entitled to have his judgment vacated on account of any innocent mistake or want of recollection on the part of the plaintiff, nor even on account of the perjury of other witnesses. The judgment in this case rested entirely upon the perjured testimony of Laithe.

In *Graver v. Faurot,* 76 Fed. 257, the complainant brought a suit in equity in a state court, in which he charged two defendants with fraudulently inducing him to purchase some worthless shares of corporate stock, and, in accordance with chancery practice, required the parties made defendants to answer certain allegations or interrogatories in the bill under oath. The defendants answered. The answers were false and perjured, and the complainant suffered defeat. He subsequently discovered that the answers made by the defendants were false, and then brought suit to vacate the judgment. The court held that the making of the false answers was a positive and actual fraud, which vitiated the decree. It will be observed in this case that the judgment sought to be vacated was obtained by reason alone of the perjury of the two defendants in their answer to the interrogatories propounded to them. These cases cited by counsel have been examined because they seem to be more clearly in support of the principle that perjury of the successful party comes within the statute as fraud. But it will be observed that they are distinguished from the case at bar in this: that in each of them the judgment was based solely upon the perjury of the prevailing party. In the case at bar there is other testimony to support the judgment than that of the respondent. The question propounded to respondent at the trial, if he had received any consideration for his becoming a surety, or any portion of the proceeds of the note, was doubtless intended to go to the issue of suretyship. The fact whether he had received compensation for the accommodation would not primarily affect the issue of suretyship. We have seen no reason assigned why the compensation of a surety for his undertaking between himself and his principal would change the relation between the payee of the note and the surety. In other words, if it were true that Swalwell was paid by Walling

to become his surety, it would not affect the contract be-
tween appellant, as payee of the note, and Swalwell.    It
appears from the evidence subsequently discovered by ap-
pellant that Walling promised to pay Swalwell $750 as
the consideration for Swalwell becoming his surety on the
note.    It does not appear from the petition that this con-
sideration had been paid, or that Swalwell had received
any of the proceeds of the note.    The answer of Swalwell
to the question propounded to him, that he had not received
any consideration for his becoming surety, is, to put the
most favorable construction upon it, disingenuous and lit-
eral.    It evaded directly answering the truth, and was
misleading.    But, if he had answered that he received a
consideration, such answer alone could not have changed
the result of the trial.    In fine, the judgment did not rest
upon the alleged false testimony.

2.    But it is further assumed by the learned counsel
for appellant that the writing discovered subsequently to
the entry of the judgment was proof of the fact that Swal-
well was a joint maker or principal upon the note, and
the proposition is urged that, if the surety be indemnified
by his principal in money or property to the value of the
note, then the contract of suretyship is gone, and such
indemnity makes the surety a principal, and he thus be-
comes directly liable to the payee of the note.    It would
seem, though not essential to the determination of this
cause, that the proposition urged by counsel may be modi-
fied and conceded thus:    That if the surety is fully indem-
nified in money or property of full value to the amount
of the note, such surety is estopped from setting up against
the payee of the note the defense that the time of payment
has been extended in favor of the principal without the
consent of the surety.    The indemnity placed by the prin-
cipal with the surety seems to be, in effect, a trust fund,
which may be applied in payment of the amount due.

Perjury is not specified in our statute as a distinctive ground for vacating a judgment. There must, at any rate, be connected with it such circumstances as will relieve the opposite party from all implication of want of diligence, and deceive him completely in the nature of the testimony. The statute of Minnesota makes perjury a cause for vacating a judgment, and in *Stewart v. Duncan,* 40 Minn. 410 (42 N. W. 89), the supreme court of that state observed, in reference to this law:

" This statute is in derogation of the well-established and salutary principle and policy of the common law, which forbids the retrial of issues once determined by a final judgment."

The same court, in *Hass v. Billings,* 42 Minn. 63 (43 N. W. 797), observes:

" Besides the reason that the act is in derogation of the common law, there is another reason for a strict construction, furnished by the consequences to which a large construction would lead. All who are familiar with the trial of causes know how ready the defeated party is, however full an opportunity he may have had to present his case, to charge that the result was brought about by false swearing and perjury of the successful party and his witnesses. That is often the feeling of the defeated party, especially where there is a direct conflict between the testimony on one side and that on the other."

In *Allen v. Currey,* 41 Cal. 318, where the opposite party was sworn as a witness, and knew of a fact which, if proved, would have given judgment to the other party, and failed to disclose it, the court said:

" But it is quite evident that if a judgment could be set aside as fraudulent on such a showing as this, litigation would be interminable. If, on another trial, the plaintiff should still fail to maintain his case, he might, on the same theory, thereafter institute a new action on the discovery of additional evidence, and so on *ad infinitum.* If the losing party were permitted to assail the judgment

as fraudulent, on the ground that his adversary knew the facts to be as he claimed them to be at the trial and failed to disclose them, and that he has since discovered some additional evidence tending to prove them, a judgment, instead of being a 'final determination of the rights of the parties,' as defined by the statute, would be little else, in its legal effect, than an order to show cause why it should not be set·aside."

In *Greene v. Greene,* 2 Gray, 361 (61 Am. Dec. 454), the supreme court of Massachusetts observes:

" The maxim that fraud vitiates every proceeding, must be taken, like other general maxims, to apply to cases where proof of fraud is admissible.    But where the same matter has been either actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is.the highest evidence, and cannot be controverted."

In *United States v. Throckmorton,* 98 U. S. 61 (25 L. ed. 93), the United States supreme court said:

" The doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

See, also, 2 Freeman, Judgments (4th ed.), § 489; *Pico v. Cohn,* 91 Cal. 129 (25 Pac. 970, 25 Am. St. Rep. 159).

It cannot be the rule that a judgment can be attacked for fraud because in the trial the prevailing party defendant failed to voluntarily disclose the weakness of his defense, or some evidence which would tend to overthrow his defense.    Ordinarily, the pleadings must determine what issues will be tried; and it has never seemed to be the practice that a party must disclose to his adversary what his testimony will be, or that he must suggest testimony for his adversary.    Where interrogatories are propounded to the opposite party, he must answer, and answer truly.    If his answer be false, as in the case in 76 Fed., *supra,* then

it may be fraud sufficient to vacate any judgment which such false answer supports. It will be observed in the case at bar that no questions were propounded to respondent relative to the question of indemnity of himself as surety. It would seem here that the complaint is that respondent did not voluntarily disclose to appellant that respondent was indemnified fully as surety. We cannot think it a safe rule to go so far as the position of appellant requires in this regard. The vacation of the judgment by the court is in the exercise of its sound discretion, and therefore, in view of the facts presented in the petition, and the caution which public policy demands in upholding a judgment in a case which has been fairly heard and in which full opportunity existed to determine its merits, we cannot answer that a case is made to authorize the vacation of the judgment.

The judgment of the superior court is affirmed.

GORDON, C. J., and DUNBAR and FULLERTON, JJ., concur.