[No. 13848. *En Banc.* January 11, 1918.]

EMMA MARIE BURKE et al., *Appellants*, v. ED. BLADINE
et al., *Respondents.*[1]

JUDGMENT — RES JUDICATA — PARTITION OF ESTATE — PROBATE OF WILL. The title acquired by a devisee in a will, although vested immediately on the death of the testator, is divested by an adjudication in an action to quiet title and for a partition between the same parties, brought in the same court in which the probate of the will was pending and undetermined; since the superior court has jurisdiction of actions to quiet title and for partition involving the same property, and the exclusive jurisdiction to probate the will as a court of probate is not infringed by the partition suit, judgment in which is *res adjudicata.*

JUDGMENT—ACTION TO SET ASIDE—PLEADINGS — FRAUD. A complaint in an action to set aside a judgment quieting title on the ground that defendants designedly failed to probate a will does not sufficiently allege fraud, where no affirmative act was shown preventing discovery of the filing of the will for probate which was of public record; since it is not fraud to fail to disclose evidence to defeat the claims of the adversary, and conclusions are not sufficient.

SAME—SETTING ASIDE—PERJURY. A judgment cannot be set aside for perjury in obtaining it, unless there be in addition some collateral fraud.

Appeal from a judgment of the superior court for King county, Jurey, J., entered August 3, 1916, upon sustaining

[1] Reported in 169 Pac. 811.

a demurrer to the complaint, dismissing an action for equitable relief. Affirmed.

*C. S. Goshert* (*Alfred Gfeller*, of counsel), for appellants.
*Saunders & Nelson* and *Karr & Gregory*, for respondents.

MAIN, J.—By this action the plaintiffs seek to have set aside a judgment in an action to quiet title and a judgment in an action of ejectment, because it is claimed that the court was without jurisdiction in either action, and that the judgment in the equity action was secured by fraud. To the complaint, a demurrer was interposed and sustained. The plaintiffs refused to plead further and elected to stand upon their complaint, and appealed from the judgment dismissing the action.

The complaint is too long to be here set out in full, and, with the exception of the portions which we hereinafter quote, may be summarized as follows: On the 19th day of June, 1890, Olaf S. Anderson and Sarah F. Anderson were husband and wife, and on this day acquired title to lot three (3), in block eleven (11), in Commercial Street Steam Motor addition to the city of Seattle, and immediately thereafter took possession of the same. Sarah F. Anderson died on the 16th day of August, 1893, and left surviving her Olaf S. Anderson, her husband, three children by a former husband, and two grandchildren, the children of a deceased daughter. The day before her death, Sarah F. Anderson made and executed her last will and testament, bequeathing to her children and grandchildren one dollar ($1) each, and devising and bequeathing to her husband, Olaf S. Anderson, all the rest and remainder of her estate, both real and personal. Olaf S. Anderson was named as executor in the will. On the 28th day of August, 1893, the will was filed for probate, and the court made an order fixing the 8th day of September, 1893, as the date for proving the will. No one appearing on the date set for the proving of the will, the cause was continued from time to time until the 3d day of November,

1893, when the court of its own motion dropped the matter from the calendar, to be taken up and disposed of at such time as the witnesses thereto should appear to prove it. The will was not admitted to probate until the 20th day of March, 1916. On the 26th day of May, 1902, Olaf S. Anderson executed a deed conveying the above-described property to the appellants in this action, who took possession of the same on the 26th day of May, 1902, and remained in possession until the 3d day of February, 1913, when they were dispossessed in the ejectment suit above referred to.

If the complaint states a cause of action, it is by virtue of the allegations in three paragraphs thereof, which will be here quoted in full:

"(7) That said Olaf S. Anderson had failed and neglected to proceed with and complete the administration of the estate of his said wife, and that the defendants F. G. Cookson, Emma Duby and Isabel Thornthwaite, although fully aware of the existence of the last will and testament of said Sarah F. Anderson, the filing of the same for probate and the proceedings had therein, designedly failed to prove up the last will and testament of said Sarah F. Anderson, and designedly failed to proceed with the administration of said estate, and designedly failed to make any claim to the estate of said Sarah F. Anderson until after the death of said Olaf S. Anderson, which occurred nine years after the demise of the testatrix, and until after the witnesses to said will had removed from the State of Washington, and until the death of the person who wrote said will had died, which was five years after the conveyance of said real estate to these plaintiffs, and five years after the death of said Olaf S. Anderson; that defendants designedly permitted the action commenced to probate said last will and testament of said testatrix to remain in abeyance and uncompleted, and designedly failed to assert or claim any right, title or interest in and to said real estate for nearly fourteen years after the death of said Sarah F. Anderson; that defendants knew that on the 12th day of August, 1902, these plaintiffs gave a mortgage on said real estate to Nels Peterson to secure the payment of the sum of two hundred dollars ($200), which

mortgage was filed for record in the office of the auditor of King county, Washington, and recorded in volume 194 of Mortgages, at page 133, records of said county; that said defendants knew that said mortgage was assigned by said Nels Peterson to A. E. Blavine, known also as Ed. Bladine, one of the defendants herein, on the 3d day of August, 1904, which said assignment was filed for record in the office of the auditor of said King county, and recorded in volume 266 of Mortgages at page 284, records of said King county; that they designedly stood by and permitted these transactions to be carried on, until after the death or removal from the state of all parties connected with the execution of said will of said Sarah F. Anderson; that no claim was made by said defendants until the 25th day of June, 1907, when the defendant F. G. Cookson, for himself and on behalf of defendants Emma Duby and Isabel Thornthwaite, for the first time made a demand upon these plaintiffs for an accounting, and that they pay rent for the possession of said above described property, then claiming that said property was the community property of the said Olaf S. Anderson and Sarah F. Anderson and defendants were entitled to a one-sixth interest each in and to said property, which demand and claim these plaintiffs refused and denied upon the grounds that they were the sole owners of said property by virtue of the said deed of warranty from Olaf S. Anderson, aforesaid.

"(8) That on or about the 24th day of July, 1907, the defendants F. G. Cookson, Emma Duby and Isabel Thornthwaite, with the intent to cheat and defraud plaintiffs out of a one-half interest in said real estate, commenced an action in the superior court of King county, Washington, against plaintiffs herein and A. E. Blavine, one of the defendants herein, being Cause No. 57179, to quiet title in them to a one-sixth interest each in and to said above described real estate, and for partition of the same; that said action did not come on for hearing for almost three years; that a decree of partition was entered in said proceeding and the court appointed D. K. Sickels referee to appraise and sell all of said above described real estate thereunder, except so much thereof as was taken by the city of Georgetown, King county, Washington, for street purposes, under condemnation proceedings in Cause No. 69252, in which cause judg-

ment was entered on the 24th day of February, 1910; that said real estate was sold by said referee to Mrs. Ed. Bladine, one of the defendants herein, on or about the 29th day of April, 1911, for the sum of sixteen hundred dollars ($1600), and which sale was approved by the court on the 20th day of May, 1911, and referee's deed filed for record in the office of the auditor of King County, Washington, on the 9th day of June, 1911, and recorded in volume 785 of Deeds, at page 152, records of said King county.   .   .   .

"(11) That for a long time prior, and at the time of the demise of the said Sarah F. Anderson and Olaf S. Anderson, the defendant F. G. Cookson was living near them and was fully acquainted with their affairs and had full knowledge of the existence of the said last will and testament of said Sarah F. Anderson, and of the person who wrote said will and the witnesses thereto, and the pendency of the action to probate the same; that Emma Marie Burke, one of the plaintiffs herein, did not come to the state of Washington until the year 1900, and up to that time had no knowledge whatever of the affairs of said Olaf S. Anderson and Sarah F. Anderson, deceased, and that she did not learn that the said Sarah F. Anderson left a will devising said above described property to the said Olaf S. Anderson and that said will had been written by the said Harry C. Carson and witnessed by William Peterson and Mrs. Viola Stenfalt until the commencement of said partition proceeding; that she immediately began a search for said will, but was unable to find it; that she believed that defendant F. G. Cookson had secured possession of said will and destroyed it; that notwithstanding this belief these plaintiffs kept up a constant search for said will until the latter part of November, 1915; when the same was found locked up in the vault in the office of the clerk of the superior court of King county, Washington, together with a number of other old papers, where it had remained since it was filed on the 28th day of August, 1893; that by reason of said will not being admitted to probate it was not recorded in the record of wills in said office; that immediately upon the discovery of said will a diligent search was commenced for witnesses to prove said will; that said will was duly and legally proved and admitted to probate in this court on the 20th day of March, 1916, as provided by statute in such cases made and provided."

The purchaser of the property at the referee's sale in the partition proceedings subsequently brought an action of ejectment against the appellants which resulted in their being dispossessed of the property. The plaintiffs in the ejectment suit, as well as the plaintiffs in the action to quiet title and for partition, are made defendants in this action. If the complaint states a cause of action, the judgment must be reversed, otherwise it should be affirmed.

As preliminary to a consideration of the questions of law, it may be admitted that devises of real estate vest in the devisee upon the death of the testator, and that, in order that an action may be *res adjudicata* as to a subsequent action, the subject-matter and the parties in the two actions must be the same.

The principal question in the case is whether the title acquired by the devisee of the will has been divested by the adjudication in the action to quiet title and for partition. The appellants claim that the probate court had acquired original and exclusive jurisdiction over the parties and the subject-matter by the filing of the will and the petition for probate, and that the court had no jurisdiction, either in the action to quiet title and for partition, or in the ejectment proceeding. This contention overlooks the basic fact that what is referred to generally as a probate court is not a court of limited jurisdiction, but that probate matters are included in the aggregate jurisdiction of the superior courts as courts of general jurisdiction, to be exercised along with their other jurisdictional powers, both legal and equitable, and as a part of those general powers. *Sloan v. West*, 63 Wash. 623, 116 Pac. 272; *State ex rel. Keasal v. Superior Court*, 76 Wash. 291, 136 Pac. 147. In the case last cited, it was said:

"In conferring jurisdiction upon the superior courts in probate matters, the constitution makers did not carve out a section of the jurisdiction of the courts of this state and confer it as a limited subject upon the superior courts as

probate courts of limited jurisdiction. The failure at all times to observe this fundamental fact has led to some confusion in our own decisions. The constitution simply throws probate matters into the aggregate jurisdiction of superior courts as courts of general jurisdiction, to be exercised along with their other jurisdictional powers, legal and equitable, and as a part of those general powers."

It cannot be denied that the superior court, in the exercise of its equity powers, has jurisdiction in actions to quiet title to real property and for partition thereof. In this case, in the action to quiet title and for partition, the same property was involved as is here involved, and the appellants here, Mr. and Mrs. Burke, were defendants in that action. It is undoubtedly true that all questions involving the probate of wills or the settlement of estates must be determined in the probate proceeding, but this would not divest the court of power, in the exercise of its general equity jurisdiction, to entertain an action to quiet title and for partition. The power of partition is not necessarily involved in the proof or contest of wills or the distribution of an estate. Any estate, whether testate or intestate, may be open to partition in courts of general jurisdiction where the partition has not been adjudicated by the probate court as a part of its duties in effecting the distribution of the estate. The exclusive jurisdiction of the probate court to establish the will of Sarah F. Anderson was, therefore, not infringed by the partition proceeding. The superior court had jurisdiction of the subject-matter and the parties in the action. The authorities cited by the appellants deny jurisdiction to other courts only in matters falling strictly within the jurisdiction of the probate court. The action to quiet title and for partition called upon the defendants there, the appellants here, to make their defenses, such as the fact that Sarah F. Anderson died testate, and that their title was supported by the devise of the property to the husband, Olaf S. Anderson, from whom they acquired title. In other words, in that action the appellants were required to present the evidence

which would sustain their title and defeat the claim of their adversaries. That action involved the title to the property, and not the probate of the will or the distribution of the estate. The will and the probate procedings were evidence which, if offered, would have sustained the appellants' title. It is held in *Clemens v. Clemens*, 37 N. Y. 59, that an action for partition of lands of a decedent, alleging that he died intestate, calls upon the defendants to make their defenses, such as the fact that he left the will fixing the title otherwise, and that such partition decree would be *res adjudicata* as to intestacy. A paragraph of the syllabus, which correctly epitomizes the opinion upon the point, is as follows:

"The question of intestacy is established by the adjudication of a competent court having jurisdiction of the subject-matter, and of the parties adjudicating and settling the same."

Another question should be considered.

It is claimed that the judgment in the action to quiet title and for partition was fraudulently obtained by the plaintiffs in that action, who are respondents here. The complaint alleges that these parties were fully aware of the existence of the will of Sarah F. Anderson, the filing of the same for probate, and the proceedings therein, and that they designedly failed to prove up the last will and testament; designedly failed to proceed with the administration of the estate; designedly failed to make any claim to the estate; designedly permitted the action commenced to remain in abeyance for a considerable time; designedly failed to assert any claim of title to the land for many years; and other allegations of like import. These allegations amount to nothing more than that the plaintiffs, in the action to quiet title, failed to disclose to their adversaries in that suit evidence which would defeat their own title and sustain that asserted by the rival claimants, who were defendants in the action. The probate of the will of Sarah F. Anderson, so far as it had proceeded, was a matter of public record equally available

to all. It is not alleged that the plaintiffs in that action knew that the will was in the vault where it was subsequently found. Neither is it alleged that the plaintiffs, by any affirmative word or act, prevented the defendants from establishing their claim of title in that action, or prevented them from discovering the probate proceedings or the will. It is not fraud for a party to an action to fail to disclose to his adversary evidence that will defeat his own claim and sustain that of the adversary. As was said in *McDougall v. Walling*, 21 Wash. 478, 58 Pac. 669, 75 Am. St. 849, and again in *Friedman v. Manley*, 21 Wash. 675, 59 Pac. 490:

"It cannot be the rule that a judgment can be attacked for fraud because in the trial the prevailing party defendant failed to voluntarily disclose the weakness of his defense, or some evidence. which would tend to overthrow his defense. Ordinarily, the pleadings must determine what issues will be tried; and it has never seemed to be the practice that a party must disclose to his adversary what his testimony will be, or that he must suggest testimony for his adversary."

In *Davis v. Seavey*, 95 Wash. 57, 163 Pac. 35, the defendant was the beneficiary and the testatrix of the will. The plaintiff was the beneficiary under a codicil executed subsequent to the execution of the will. The defendant and testatrix, as testatrix, caused the will to be probated, but did not probate the codicil, which it was alleged in the complaint was in her possession. The action in that case was brought over two years after the rendering of the decree of distribution, and the complaint prayed that the defendant be required to deposit the codicil in the court for inspection, and that the plaintiff have such other relief as might seem just and equitable. The cause was here upon the allegations of the complaint, demurrer having been sustained thereto by the trial court, and the plaintiff declined to plead further. It was there held that the complaint did not charge fraud. It was said:

"The only allegation of the complaint which in any way suggests fraud on the part of respondent is that she, as

executrix, came into possession of the property and papers of the deceased, including the alleged codicil, and that she did not make known to the court the existence of the codicil in the course of the administration of the estate. ˙ This in no event could amount to anything more than an allegation that respondent did not present to the court, upon the final distribution hearing, the true facts touching the question of who is entitled to the property as distributee. In other words, this is nothing more than an effort to avoid the decree of distribution as a final adjudication because of the presenting of false proof touching the merits of the question of who is entitled to the property of the estate as distributee. This is not ground for setting aside a final decree rendered upon due notice, as this decree of distribution was rendered. In *Meeker v. Waddle*, 83 Wash. 628, 145 Pac. 967, a similar situation was presented, in that the only ground of fraud alleged or attempted to be proven was that the distributee falsely represented that the land in controversy was the community property of himself and his deceased wife, whereas in truth it was her separate property. Holding that this was not ground for avoiding the decree of distribution, Judge Holcomb, speaking for the court, observed:

" 'If decrees were to be set aside upon the mere ground that they were based upon perjured testimony, decrees might never become final, for the decree which held that a former decree was founded upon perjured testimony might itself later be attacked upon the ground that it was procured by perjured testimony, and so on *ad infinitum*.'

"See, also, *Friedman v. Manley*, 21 Wash. 675, 59 Pac. 490; *McDougall v. Walling*, 21 Wash. 478, 58 Pac. 669, 75 Am. St. 849.

"The decisions of the court are substantially unanimous in support of this view. We have noticed that appellant was not prevented from appearing and setting up her claim during the course of the administration of the estate, nor upon the final distribution hearing, nor induced to refrain from so doing by any word or act of respondent. These are the matters to which alleged fraud must relate in order to be available in avoiding the final effect of a decree rendered upon due notice. We conclude that there was no cause for disturbing the decree on the ground of fraud."

It is also claimed that the decree in the action to quiet title and for partition was fraudulent, in that it was secured by perjury. The facts upon which the claim of fraud and perjury is based are not set out in the complaint. It is well recognized that, to plead a charge of fraud or perjury, the facts must be stated, and that conclusions or epithets are not sufficient. But, assuming that the complaint sufficiently charges perjury, it does not follow that the judgment can be disturbed, because perjury committed in an action, whatever else it may be, is not fraud. In *McDougall v. Walling*, and again in *Friedman v. Manley, supra*, this court said:

"Perjury is not specified in our statute as a distinctive ground for vacating a judgment. There must, at any rate, be connected with it such circumstances as will relieve the opposite party from all implication of want of diligence, and deceive him completely in the nature of the testimony."

In *Meeker v. Waddle*, 83 Wash. 628, 145 Pac 967, we said:

"If decrees were to be set aside upon the mere ground that they were based upon perjured testimony, decrees might never become final, for the decree which held that a former decree was founded upon perjured testimony might itself later be attacked upon the ground that it was procured by perjured testimony, and so on *ad infinitum*. We are convinced, therefore, that there were not sufficient facts either stated in the complaint or proven at the trial by respondent to entitle respondent to recover, and that the judgment of nonsuit moved for by appellant should have been granted."

In *Robertson v. Freebury*, 87 Wash. 558, 152 Pac. 5, L. R. A. 1916B 883, after quoting from the foregoing decisions, we said:

"Since the question is here again presented, we have again examined the decisions from other jurisdictions and find that they fully sustain the rule which we have adopted. *Graves v. Graves*, 132 Iowa 199, 109 N. W. 707, 10 L. R. A. (N. S.) 216; *Pico v. Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 25 Am. St. 159, 13 L. R. A. 336; *Steen v. March*, 132 Cal.

616, 64 Pac. 994; *Friese v. Hummel*, 26 Ore. 145, 37 Pac. 458, 46 Am. St. 610; *Donovan v. Miller*, 12 Idaho 600, 88 Pac. 82, 9 L. R. A. (N. S.) 524; *Guthrie v. Doud*, 33 Ill. App. 68; *Hardeman v. Donaghey*, 170 Ala. 362, 54 South. 172; *Hass v. Billings*, 42 Minn. 63, 43 N. W. 797; *Greene v. Greene*, 2 Gray (Mass.) 361, 61 Am. Dec. 454; *United States v. Throckmorton*, 98 U. S. 61. The foregoing are but a few of a legion of decisions sustaining and exemplifying to its full extent the rule as stated in our own decisions. As said by Judge Deemer, speaking for the supreme court of Iowa in *Graves v. Graves, supra*:

" 'There is very little conflict in the cases upon this proposition. In Kansas and in New York a different rule seems to prevail, although in the latter state the authorities are conflicting.' "

As further pointed out in the *Freebury* case, it is only where the prevailing party, by some extrinsic or collateral fraud in addition to the perjury, has prevented a fair trial that equity will set aside the judgment. Adopting the language of *Pico v. Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 25 Am. St. 159, 13 L. R. A. 336, we said:

" 'What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest. (*United States v. Throckmorton*, 98 U. S. 65, 66, and authorities cited). In all such instances, the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but when he has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by

perjured testimony, and if he likewise fails to show the injustice that has been done him, on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy.'"

No such collateral or extraneous fraud is pleaded in the complaint before us. The suit to quiet title and for partition was pending for nearly three years. There is no allegation that, during any of that time, any of the respondents in the present action had possession of the will or knew where it was. In fact, it is alleged that it was then locked in a safe of the clerk of the superior court of King county, where it had been ever since it was filed in 1893, and where it was subsequently found. Surely, since the will was admittedly filed for probate on August 28, 1893, thereafter, that was the most natural place to look for it. There is nothing alleged tending to show that it would have been more difficult to find it while the partition suit was pending, from July, 1907, until February, 1910, than it was to find it when it was actually found in November, 1915. There is no allegation that respondents did anything to conceal its existence.

This complaint presents nothing more nor less than an attack on the judgment in the partition suit on the ground of newly discovered evidence, which might just as easily have been discovered in time for use in that suit as now, or at least within the statutory period of one year from the entry of that judgment. It falls distinctly within the rule announced in *Denny-Renton Clay & Coal Co. v. Sartori*, 87 Wash. 545, 151 Pac. 1088, that,

"By abolishing the distinction between actions at law and suits in equity and adopting the one-year limit of time within which courts may vacate judgments for newly discovered evidence, it was the clear intention in this state to limit the time within which the judgment of a court of competent jurisdiction and which had legally acquired jurisdiction of the parties and subject-matter could be, either directly or collaterally attacked."

Since the court had jurisdiction in the action to quiet title and for partition, and the complaint fails to make a charge

of fraud, it necessarily follows that no cause of action is stated.

The judgment will be affirmed.

ELLIS, C. J., MOUNT, MORRIS, PARKER, WEBSTER, and HOLCOMB, JJ., concur.