[No. 21911. *En Banc.* March 31, 1930.]

ZAPON COMPANY, *Appellant,* v. RALPH H. BRYANT *et al., Respondents.*[1]

[1]Reported in 286 Pac. 282.

162

*J. Lael Simmons, Edw. M. Berolski,* and *Albert H. Solomon,* for appellant.

*Charles Gilbert Moran,* for respondents.

TOLMAN, J.—Appellant, as plaintiff, sued for the recovery of the purchase price of merchandise sold and delivered of the value of $164.42. By its bill of particulars, it itemized a long list of merchandise so sold and delivered from June, 1926, to August, 1927, amounting in all to the sum of $1,934.65, with credits thereon amounting to $1,770.23, leaving a balance in the amount sued for.

By answer, the defendants admitted the purchase of merchandise at various times from the plaintiff, but denied that any sum of money was due on account thereof and, by way of counterclaim, pleaded the purchase of certain materials from the plaintiff for the express purpose of lacquering a certain specified building in the city of Aberdeen; alleging that plaintiff, through its duly authorized agent, had examined the building, consulted with the general contractor and had thereupon represented and warranted to the defendants and to the general contractor that its product, which it afterwards furnished, was of a quality and character fit for the purpose intended; that, in reliance upon this representation and warranty, the merchan-

dise was ordered, but that it proved to be unfit and improper for the purpose intended and had to be removed at great expense, and other material had to be obtained and used to perform the contract, to the damage of defendants in the sum of $2,000. There was another counterclaim of somewhat similar nature pleaded, but, as no recovery was had thereon, we need not further mention it.

The action was tried to the court, sitting without a jury, resulting in a holding against the plaintiff and in favor of defendants on their first counterclaim to the extent of $1,001.63. A timely motion for a new trial was made and denied. Findings of fact and conclusions of law were signed, to which no exceptions were taken. The plaintiff requested no findings and none were made as to its cause of action. A judgment followed dismissing plaintiff's action and awarding defendants a recovery as already indicated. Shortly after the judgment was entered, a voluminous petition to set aside and vacate the judgment was made. A demurrer to this petition was sustained and the plaintiff has appealed.

The first assignment of error relates to the dismissal of plaintiff's cause of action. In view of there being no request for any findings of fact on this subject, and as the motion to dismiss was interposed and granted at the close of appellant's case in chief, we must first look to the record as it then stood. Plaintiff called as its only witness the respondent Bryant, and interrogated him under the rules relating to the examination of adverse witnesses, endeavoring to prove by him the sale and delivery and the fact of non-payment. He admitted receiving merchandise amounting to as much or more than the balance claimed, but maintained that more than that amount of material purchased from appellant had proved valueless. At the close of

this testimony, a colloquy was had between court and counsel, and the situation was fairly summed up in a statement by counsel for defendant as follows:

". . . We are contending this, that those materials, some of them, were delivered on the Aberdeen job, which is admitted, I think, and some delivered on the West Seattle job. We are contending, however, that while those materials were actually delivered they were not as ordered and that we don't have to pay for them because they were not material that was ordered, . . ."

If this proof was sufficient to put respondents to their defense as to the value of the material for the particular work for which it had been furnished, probably enough was brought out in the testimony of respondent Bryant upon that subject to meet the burden, but if the defensive proof was in any degree or particular insufficient, still appellant was not prejudiced, as abundant proof on that point was offered in support of the counterclaim and the same result would have inevitably followed at the close of all of the evidence.

The next point is that the findings of fact on the counterclaim are insufficient to support the judgment. The particular finding thus attacked reads:

"That because of the breach of warranty of the plaintiff corporation for failure to supply material suitable for the particular job of lacquering the Becker building in Aberdeen, Washington, as specifically warranted to do, this defendant sustained damages in the sum of $1,001.63."

It must be admitted that this finding leaves something to be desired, but by preceding findings it was established that the goods were sold under warranty for the particular job; that they were properly applied, but failed to produce proper results; proved wholly unsatisfactory to the general contractor and did not remain on the walls; and that respondent was

obliged to remove this material from the walls and replace it with other materials. These findings, while not complete in that they do not show what was the reasonable cost to respondent of removing and replacing material made necessary by the failure of the warranty, are yet, we think, in the absence of any request for more specific findings and in the absence of any exception, sufficient to sustain the judgment.

The next two assignments will be considered together. They are to the effect that the court erred in denying a motion for continuance and erred in denying plaintiff's motion for a new trial.

While much of the argument of counsel is directed to these matters and what is considered to be the unfortunate results growing therefrom, the record discloses but little for us to pass upon.

The motion for a new trial embraces all of the statutory grounds, but nothing more, and from it we cannot determine that any ruling on a motion for continuance was then called to the court's attention, though the facts hereinafter referred to were copiously set forth in an accompanying affidavit. The appearance docket entries, brought here in the transcript, show that the case was first set for trial on September 20, 1928; again set for November 16; continued to December 11, following, and called for trial on the morning of December 12, 1928. When asked if the parties were ready, appellant's then counsel answered:

"Your Honor, I can't say that I am ready, but I am here and I can't help it."

Then followed a long statement from him outlining non-success in securing the return of certain desired depositions with a complimentary reference to the consideration shown by opposing counsel. The court then intervened as follows:

166

"THE COURT: Wasn't the case continued in November? MR. SIMMONS: Yes, the case was continued in November, at which time we sent an additional stipulation to San Francisco with instructions to forward to Los Angeles. THE COURT: I do not understand you are making any motion at this time? MR. SIMMONS: At this time I would like to ask the court's indulgence to this extent, that when the depositions do arrive, which should be this afternoon or in the morning, they could be presented in this case. THE COURT: This case will not take over an hour, will it? MR. SIMMONS: No, it will not. The defendant is counterclaiming, and counsel for the defendant was willing to stipulate the goods were furnished and proceed on the counterclaim. That was before the last continuance. I don't know whether he is still in that mood or not. THE COURT: There is no motion pending. You may proceed. MR. SIMMONS: Well, I would like to make this motion, Your Honor, that the case be held open, so that my depositions may be used in evidence, that is, that judgment be not rendered at the conclusion of the evidence here. THE COURT: Well, that means be continued indefinitely. These depositions are being taken where and at what time? MR. SIMMONS: They are being taken in Los Angeles. THE COURT: When? MR. SIMMONS: Saturday. THE COURT: Taken in Los Angeles Saturday? MR. SIMMONS: Well, that was my wire on Saturday, they were going to take them that night and mail them that night, but they didn't do that. The 10th was Monday. And then that night about 5:00 o'clock I got this wire: 'Disregard my last wire. Depositions will be taken in the morning.' That is Tuesday morning. THE COURT: Yesterday morning? MR. SIMMONS: Yesterday morning 'and air-mailed to you tomorrow.' That was yesterday they would be air-mailed to me. THE COURT: Well, of course, if they arrive before we conclude the case they may be admitted, otherwise there would be no further continuance. You may proceed."

Thus it clearly appears that, though the court rather invited a motion for continuance, none was made, coun-

sel evidently believing that the depositions would arrive in time to be considered. The situation as thus disclosed is one calling for the exercise of the discretion of the trial court and that court, if satisfied that there had been a miscarriage of justice might have granted the motion. But it is not for us to say, from this record, that there was an abuse of discretion in denying it.

■ Error is assigned upon the admission in evidence of a certain contract purporting to be the contract under which respondent did the work on the Becker building in Aberdeen. This assignment seems to be based upon the assumption that there was no proof that respondent purchased the materials which he used on the Becker building from the appellant. The trial court distinctly found that respondent did so purchase the material and no exception was taken to that finding. Hence, we cannot say that it was error to admit the contract in evidence.

■ The final assignment is based upon the ruling (by a judge other than the one who tried the case) upon the demurrer to the petition to vacate the judgment.

The petition was filed under the authority of Rem. Comp. Stat., § 464, and it seems to have been grounded chiefly upon subdivision 4 of that section, which reads: "For fraud practiced by the successful party in obtaining the judgment or order." All of the matters relating to the depositions and a continuance were again set forth in the petition at full length, but manifestly no fraud can be predicated thereon, and the questions of irregularities, inadvertence and excusable neglect are foreclosed by what we have already said in disposing of the motion for a new trial.

The remainder of the petition can in general terms

be reduced to two propositions: (1) If appellant had foreseen fully the nature of the case which respondents would present, it could have successfully met it; and (2) that respondent and his witnesses swore falsely as to material facts.

It does not appear that appellant was in any way deceived or misled by anything said or done by the respondents at any time. Mere failure to advise an adversary in advance of the details of one's claim against him cannot be held to be fraud.

A judgment cannot be set aside for perjury in obtaining it unless there is in addition some collateral fraud. *Burke v. Bladine*, 99 Wash. 383, 169 Pac. 811; *McDougall v. Walling*, 21 Wash. 478, 58 Pac. 669, 75 Am. St. 849; *Friedman v. Manley*, 21 Wash. 675, 59 Pac. 490; *Meeker v. Waddle*, 83 Wash. 628, 146 Pac. 967; *Robertson v. Freebury*, 87 Wash. 558, 152 Pac. 5, L. R. A. 1916B 883.

We find in the petition no allegation of any collateral fraud, and must therefore hold that the demurrer to the petition was properly sustained.

It may be said in passing that the main trouble here appears to have been a failure upon the part of the appellant to properly appreciate, in time, the seriousness of the counterclaim, rather than any neglect or omission on the part of either of its counsel; and, while it is to be regretted that, because of that failure, its side of the case was not as fully presented as it might have been, still we can see no way in which now to relieve it, without authorizing practices which would lead to bad results.

Finding no error, the judgment is affirmed.

MITCHELL, C. J., PARKER, MAIN, BEALS, FRENCH, and MILLARD, JJ., concur.

HOLCOMB, J. (dissenting)—I cannot concur in the decision of the majority upon a very cursory review of the petition and affidavits to vacate the judgment.

The motion for a new trial had a supporting affidavit made by Norman E. Greene, head partner of the principal contractor, which, in effect, alleged that Bryant performed his work in lacquering the Becker building in a very incompetent and unskilled way, and, because of his unworkmanlike manner in doing the work, the lacquer applied to the walls of the building came off and, because of his poor workmanship, Greene discharged him from the work.

The same Greene made a supporting affidavit to the petition for vacation to the effect that the contract introduced in evidence by respondents at the trial was not the contract under which Bryant had been working up to October 26, but that he had been theretofore working under a contract which was attached to the affidavit as an exhibit, which was dated in September, 1926, under and by virtue of which Bryant agreed to do the lacquer work on the woodwork and walls in the Becker building and agreed to furnish labor and materials to be used therein; that thereafter Bryant failed to perform the contract in a skillful and workmanlike manner or to furnish the materials as therein claimed, or to furnish skilled labor or proceed with the work in a speedy and diligent manner, and for those reasons and not on account of the alleged defectiveness of any paints or lacquer, and without any reference to or account of such lacquers, it became necessary to discharge Bryant from the job; that he was discharged, the contract by mutual consent canceled, and all moneys due Bryant thereunder then and there paid to him; that thereafter he was employed as a workman at a stipulated wage, and that all moneys due him as a wage earner were paid him and in fact he had been over-

paid on account thereof. The contract of October 26 is the contract under which the stipulated wages were paid.

It appears in the petition to vacate the judgment and by supporting affidavits that appellant discovered after the trial of the case that the materials used by Bryant in the lacquering of the Becker building were, in fact, purchased from a Tacoma house, who, not having been paid a balance due therefor, filed a lien for $1,891.63, against the Becker building, which was thereafter, on June 23, 1927, satisfied of record.

It further appears in the petition to vacate that counsel for appellant had been informed by counsel for respondents that respondents would subpoena N. E. Greene, the head of the Greene Engineering Company and the principal contractor, as a witness for respondents at the trial of the case on December 12, upon which appellant depended. Respondents failed to subpoena Greene and he was not at the trial. The effect of this, although doubtless unintentional on the part of counsel for respondents, was to mislead counsel for appellant to its prejudice. That situation constituted constructive and collateral fraud. It constitutes more than mere perjury. It is patent from the affidavits of Greene that his testimony would have been very material and favorable to appellant.

It is apparent that appellant could have introduced evidence before the trial court, had the petition to vacate and a new trial been granted, tending to show that the contract relied upon by respondents was not the contract under which the labor and materials were performed and furnished; that Bryant was not discharged by reason of defective materials, but because of unskillful and unworkmanlike performance of his work; that the materials claimed by Bryant to have been purchased from appellant and used in the lacquer-

ing of the Becker building were, in fact, not the materials used.

All of these facts were very material to a defense on the part of appellant against the first counterclaim of respondents, which was the only counterclaim that the trial court considered in any way supported by competent evidence.

Upon this showing, in all fairness, the trial court should have set aside the judgment and granted a new trial in order to receive the evidence of appellant in controversion of the counterclaim.

For these reasons I dissent and conclude that the judgment should be reversed and the cause remanded for a new trial.

[1]Reported in 286 Pac. 27.